*Formatted for Electronic Distribution*                                                                                                      *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
February 17, 2016

_____

**In re:**
     **Victorious, LLC,**                                      Chapter 12
             **Debtor.**                                            Case # 15-10386
_____

| | |
|---|---|
| *Appearances:* Rebecca Rice, Esq. | Jennifer Emens-Butler, Esq. |
| Cohen & Rice | Obuchowski & Emens-Butler, P.C. |
| Rutland, Vermont | Bethel, Vermont |
| *Attorney for the Debtor* | *Attorney for the Moving Creditor* |

## MEMORANDUM OF DECISION
### GRANTING MOTION TO DISMISS
### BASED UPON LACK OF ELIGIBILITY FOR CHAPTER 12 RELIEF, AND FOR CAUSE

      The motion before the Court arises as part of what is essentially a two party dispute. The Debtor, Victorious, LLC, is a limited liability company that owns a fishing vessel used for commercial fishing operations in Alaska. Prior to the filing of this Chapter 12 bankruptcy case, the Debtor's member entity had also filed a Chapter 12 case which was dismissed due to that debtor's willful failure to comply with this Court's orders. Aleutian Leader Fisheries ("Aleutian"), the sole secured creditor in this case, holds a claim secured by a lien against the Debtor's primary asset – a commercial fishing vessel. Aleutian argues this case should be dismissed because (1) the Debtor fails to meet the eligibility requirements of a "family fisherman with regular income" under § 109(f), and (2) cause exists for dismissal under § 1208(c)(1) and (9) since the Debtor has unreasonably delayed the Chapter 12 process to the prejudice of its creditors and has not shown there is a reasonable likelihood it will be able to successfully reorganize.

      For the reasons set forth below, the Court finds that the Debtor does not meet the requirements of eligibility as defined by the Bankruptcy Code and its conduct in this case constitutes cause for dismissal.

### JURISDICTION

      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares that this contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), and that this Court has constitutional authority to enter a final judgment in this contested matter.

1

## ISSUES PRESENTED

The three legal issues before the Court are: (1) whether the Debtor meets the definition of a "family fisherman" under § 109(f)[1] and § 101(19A); (2) whether the Debtor is a "family fisherman with regular annual income" under § 109(f) and § 101(19B); and (3) whether there is cause for dismissal of the Debtor's case under § 1208(c)(1) or (9).

## BACKGROUND AND PROCEDURAL HISTORY

Victorious, LLC (the "Debtor") is a limited liability company whose sole asset is a commercial fishing vessel, the Judi B (the "Vessel"). The Debtor's only member is Alaska Tendering Company, LLC ("Alaska Tendering"), which has two members: Corey Potter ("Mr. Potter") and Maybe Potter. Mr. Potter also manages the Debtor.

On May 12, 2015, Alaska Tendering and Mr. Potter each filed for relief under Chapter 12 of the Bankruptcy Code. On May 15, 2015, counsel for Alaska Tendering and Mr. Potter filed a motion for joint administration of the two cases, asserting it would be in the debtors' best interests to administer these two bankruptcy estates together in light of their legal relationship and shared obligations to the same creditors. On June 2, 2015, the Court entered an order granting the motion for joint administration (doc. # 6, case # 15-10231) and designated In re Alaska Tendering Company, LLC [case # 15-10231] as the lead case. Thereafter, on June 29, 2015, one of the creditors filed an emergency motion to dismiss case with prejudice as to re-filing or, alternatively, a motion for relief from stay (doc. # 11, case # 15-10231, the "Emergency Motion").  The Emergency Motion alleged the debtors had failed to provide critical financial information to both creditors and the Chapter 12 trustee, despite repeated requests.[2] After a court hearing on July 10, 2015 and a telephonic hearing on August 5, 2015, on August 7, 2015, the Court entered an order deferring decision on the Emergency Motion on the condition that the debtors make adequate protection payments to Aleutian (doc. # 22, case # 15-10231, the "Adequate Protection Order").  The Court also explicitly directed the debtors to immediately turn over to the Trustee all monies they earned from the fishing operation, to obtain the Trustee's approval before expending any of that earned income, to file operating reports accounting for all income and expenditures every month, and to file amended schedules and statements to correct the inaccuracies which had surfaced during the hearings as well as any other inaccuracies of which the debtors were aware.

---

[1] All statutory citations refer to the Title 11, U.S. Code (the "Bankruptcy Code"), unless otherwise indicated.
[2] Specifically, the creditor argued that Alaska Tendering: (1) did not appear at the meeting of creditors and did not provide required documentation to the Trustee; (2) failed to provide proof of insurance for a shipping vessel that was then operating in Alaska; (3) failed to provide any information regarding the whereabouts of each vessel, any bank account information including proof of DIP accounts, and the schedule for payments and receipts from the fishing operation; and (4) failed to offer a feasible plan (doc. # 11, case # 15-10231).

Approximately one hour after the Court entered the Adequate Protection Order, on August 7, 2015, the Debtor filed the instant Chapter 12 case. This Debtor is a limited liability company of which Alaska Tendering is the sole member.

Meanwhile, the Alaska Tendering Chapter 12 case proceeded, and the hearing which had been set on the Emergency Motion was duly held on August 28, 2015. At that hearing, it was revealed that Alaska Tendering and Mr. Potter had maintained bank accounts throughout the pendency of their Chapter 12 cases and had neither replaced them with new DIP accounts upon the filing of their bankruptcy cases nor sought court approval to use the pre-petition accounts as their DIP accounts. Moreover, neither debtor had disclosed the accounts to the Court or the case trustee prior to August 28th - over three months after they filed for relief under the Bankruptcy Code. Additionally, it was only on that date that the Court and trustee learned that the bank accounts in question had had significant activity during the pendency of the cases: over $250,000 was expended from the business account, and Mr. Potter's personal account showed over $30,000 in activity (doc. # 40, case # 15-10231). It immediately became clear the debtors had neither informed the Chapter 12 trustee of these expenditures nor obtained his approval to pay those expenses. There was also no question the debtors had failed to file the operating reports and amended schedules the Court had unequivocally directed them to file in its Adequate Protection Order. Due to the debtors' failure to disclose bank accounts, open DIP bank accounts, seek Chapter 12 trustee approval before expending estate funds, and perform the duties of a debtor under the Bankruptcy Code, the Court found that the debtors had willfully failed to comply with the Adequate Protection Order. Based upon that finding, the Court dismissed both of the jointly administered cases with prejudice and, as a corollary, determined the debtors would not be eligible to seek bankruptcy relief again for 180 days, under § 109(g)(1).[3]

The instant Chapter 12 case proceeded independent of the activity in the two related cases. On October 7, 2015, Aleutian filed the subject motion to dismiss case with prejudice as to re-filing or alternatively, motion for relief from stay (doc. # 8, the "Motion"). Thereafter, the Debtor filed an objection to the Motion (doc. # 10, the "Objection") and a Chapter 12 plan (doc. # 14, the "Plan"). The Plan stated it would be funded entirely from the proposed sale of the Vessel, for $1.2 million, by June 2016.[4] Aleutian filed a response setting forth additional grounds for the relief it sought in the Motion (doc. # 18, the "Response"). Based upon the record and the representations of the parties at a hearing held

---

[3] That subsection provides:
> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

11 U.S.C. § 109(g)(1).

[4] Interestingly, the attachment to the Plan states the sale will occur by May 2016 (doc. # 14, p. 5).

3

on November 20, 2015, the Court entered an order on December 1, 2015, directing the parties to file supplemental memoranda of law addressing the dismissal relief articulated in the Motion, and deferring a determination on Aleutian's relief from stay request until after the Court ruled on the request for dismissal (doc. # 23).

Aleutian argues the Debtor is not entitled to Chapter 12 relief for two reasons. First, Aleutian asserts the Debtor fails to meet the eligibility requirements under § 109(f) since it is not a family fisherman with regular annual income as defined by the Bankruptcy Code (docs. ## 8, 18, 26). Second, it points to the Debtor's (i) unreasonable delay in disclosing crucial information, (ii) mismanagement and reckless disregard of the obligations it has under the Bankruptcy Code, (iii) continuing diminution in value and hence loss to the estate, and (iv) lack of ability to financially reorganize, taken together, as cause for dismissal under § 1208(c)(1) and (9) (doc. # 8, p. 5). The Debtor counters that it is eligible for Chapter 12 relief notwithstanding the language in the definitional sections of the Bankruptcy Code, because the Debtor's reorganization falls squarely within the scope of reorganizations Chapter 12 was enacted to facilitate (doc. # 33). Essentially, the Debtor posits that even though the Bankruptcy Code requires a corporate entity seeking Chapter 12 relief to be owned by individuals, and the Debtor's sole member is another corporate entity, the Court should look beyond that to the owners of the owner, attributing the Potters' membership of Alaska Tendering directly to the Debtor itself (doc. # 33, p. 2). The Debtor also asserts it meets the requirement of "regular annual income" because its income and expenses are reflected on the income tax return of Alaska Tendering (doc. # 33, p. 3).

## DISCUSSION

The Court considers the Motion to present two distinct grounds for dismissal: eligibility for chapter 12 and the Debtor's substantive failure to meet the operating requirements of Chapter 12. The Court will address each of these grounds separately.

1. **Does the Debtor meet the eligibility requirements for relief under Chapter 12?**

    *a. Is the Debtor a "family fisherman"?*

The purpose of Chapter 12 is to help family farmers and fishermen in economic difficulty to reorganize their debts without losing their farms when they make, and fulfill, a commitment to pay their debts from future income. See Hall v. U.S., 132 S. Ct. 1882 (2012). Under § 109(f), only a family farmer or a family fisherman with regular annual income may be a debtor under Chapter 12. The term family fisherman is defined as:

(**A**) an individual or individual and spouse engaged in a commercial fishing operation--
    ...
(**B**) a corporation or partnership--
    (**i**) in which more than 50 percent of the outstanding stock or equity is held by--
        (**I**)   1 family that conducts the commercial fishing operation; or

4

      **(II)**    1 family and the relatives of the members of such family, and such family or such relatives conduct the commercial fishing operation; and

  **(ii)**  **(I)**    more than 80 percent of the value of its assets consists of assets related to the commercial fishing operation;

      **(II)**    its aggregate debts do not exceed $1,868,200 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for 1 dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a commercial fishing operation), on the date the case is filed, arise out of a commercial fishing operation owned or operated by such corporation or such partnership; and

      **(III)**    if such corporation issues stock, such stock is not publicly traded.

11 U.S.C. § 101(19A). In light of the dearth of family fishermen cases and the striking similarity of the statutes governing family farmers[5] and family fishermen, this Court relies on cases decided in family farmer cases as germane to the dispute presented in this family fisherman case.[6]

---

[5] The statutes describing the eligibility/definitional requirements for a family farmer are found in § 101(18) and (19), which are substantially similar to § 101 (19A) and (19B). Subsection 101(18) provides:

    The term 'family farmer' means—
(A) an individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $4,031,575 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for
    (i)    the taxable year preceding; or
    (ii)    each of the 2d and 3d taxable years preceding; the taxable year in which the case concerning such individual or such individual and spouse was filed; or
(B) a corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and
    (i)    more than 80 percent of the value of its assets consists of assets related to the farming operation;
    (ii)    its aggregate debts do not exceed $4,031,575 and not less than 50 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and
    (iii)    if such corporation issues stock, such stock is not publicly traded.

Subsection 101(19) provides:
    The term 'family farmer with regular annual income' means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title.

[6] As one noted bankruptcy scholar observed, if anything, the requirements are actually more stringent for family fishermen than they are for family farmers:

    To qualify as a family fisherman, an individual or entity must meet aggregate debt and income requirements that mirror those contained in the previous versions of Chapter 12 for family farmers. To be eligible for Chapter 12, a family fisherman must have aggregate debts that do not exceed $1.5 million with not less than eighty percent of these debts arising out of a commercial fishing operation,

From the cases involving Chapter 12 farmer eligibility, it is clear that if the debtor is a corporation, its majority ownership must be held by human beings, not by another entity, and it must be those owners of the debtor who conduct the farming operation. See In re Tobin Ranch, Inc., 80 B.R. 166, 167 (Bankr. D. Neb. 1987). By establishing this requirement in § 101(18) and (19), Congress underscored its intent to protect the small family farm and exclude from Chapter 12 those "corporations which bear so attenuated a connection with the farming operation itself." See In re Tim Wargo & Sons, Inc., 869 F.2d 1128, 1131 (8th Cir. 1989); 132 Cong. Rec. 9985 (1986) (statement of Sen. McConnell) ("[A] corporation who [sic] seeks to file under chapter 12 must have 50 percent of its stock or equity owned by a person who is actually farming."). Courts have given great weight to this intention and have regularly "look[ed] past the form in which a debtor chooses to operate a farm to the substance of the debtor's farming activities." See In re Hemann, No. BR 11-100261, 2013 WL 1385404, at *15 (Bankr. N.D. Iowa Apr. 3, 2013) (relying on cases where income derived from limited liability corporations or S corporations substantially involved in farming operations was attributable to individual debtors). However, there must be a clear nexus between the entity filing for Chapter 12 relief and the conduct of the farming operations in order to satisfy the eligibility requirement. See Acee v. Oneida Savings Bank, 529 B.R. 494, 500 (Bankr. N.D.N.Y. 2015) (corporation that was not directly engaged in farming and was merely a passive rent collector did not qualify as a family farmer).

The Court has not found, and the parties have not cited, any case law that construes the applicability of the Chapter 12 eligibility requirements to an entity debtor that has an intervening limited liability company separating the debtor from the individuals conducting the farming or fishing operations.

In support of its position that the Debtor is ineligible for Chapter 12 relief because it does not satisfy the definitional requirements, Aleutian relies upon a plain reading of the statute (doc. # 26, p. 3). It also relies significantly on In re Tobin Ranch, which states: "To be eligible as a family farmer…a corporation's majority ownership [is] to be held by human beings." 80 B.R. at 167. Aleutian does not argue the Debtor is ineligible for relief because it is a limited liability company as opposed to a corporation or partnership as specified under § 101(19A). Therefore, the Court need not address that issue. Rather, the syllogism Aleutian urges the Court to adopt is: (1) Chapter 12 relief is only available to an individual or an entity which is owned by one family; (2) the Debtor is neither an individual nor an entity which is owned by one family; and therefore, (3) the Debtor is not eligible for Chapter 12 relief

---

and must have received more than fifty percent of their gross income for the taxable year preceding the bankruptcy filing from the commercial fishing operation. No justification is provided for requiring family fishermen to meet more stringent debt and income requirements than will be required of family farmers under the amended Bankruptcy Code. The difference likely results from oversight.

Katherine M. Porter, Phantom Farmers: Chapter 12 of the Bankruptcy Code, 79 AM. BANKR. L.J. 729, 735 (2005).

(docs. ## 18, 26). The language of § 101(19A) is clear, and this logic is irrefutable.

However, the analysis does not end there. As a court of equity, this Court must also take into consideration the purpose and policy of the statute. See Pepper v. Litton, 308 U.S. 295, 304 (1939). The overarching purpose of Chapter 12 is to protect farmers and fishermen and to allow them to retain their property to continue their farming or fishing operations. See Hall v. U.S., 132 S. Ct. 1882, 1885 (2012); In re Sandifer, 448 B.R. 382, 386 (Bankr. D.S.C. 2011). Hence, an argument can be made that an intervening corporate entity like Alaska Tendering should be overlooked and the individual memberships of the Potters, who are apparently conducting the actual fishing operations, should be attributed directly to the Debtor. However, the effect of doing so in this particular case would conflict with the equities. This is so because that intervening entity, Alaska Tendering, has previously sought bankruptcy relief and willfully failed to comply with Court orders. To allow Chapter 12 relief to this Debtor and overlook the gross misconduct of its related entities would, in effect, grant relief to the same individuals who violated the Court's order in the previous cases, as if they were new to the process as owners of the Debtor. It would grant them the relief the Court has purposefully denied them in a previous case. Equity will not be invoked to obtain such a result. See In re Swift, 496 B.R. 89, 100 (Bankr. S.D.N.Y. 2013)("[The equitable maxim that 'he who comes into equity must come with clean hands'] is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief…" (quoting Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 997 (1945)).

   *b. Is the Debtor "a family fisherman with regular annual income"?*

Section 101(19B) defines a "family fisherman with regular annual income" as a family fisherman whose annual income is "sufficiently stable and regular to enable such family fisherman to make payments under a plan under chapter 12 of this title." Congress intended this definition to be broad enough to allow nearly every person who qualifies as a family farmer, and presumably, a family fisherman, to be eligible for Chapter 12 relief. See In re Sandifer, 448 B.R. 382, 388 (Bankr. D.S.C. 2011); In re Sorrell, 286 B.R. 798, 804 (Bankr. D. Utah 2002). Bankruptcy courts have adopted the tax definition of income to mean "all income from whatever source derived" to determine chapter 12 eligibility. See In re Degour, 478 B.R. 1, 5 (Bankr. C.D.Cal. 2012).

Notwithstanding the very generous intent and broad language of the statute, the Debtor has categorically failed to establish it has regular annual income. The record unequivocally reflects that since the Debtor filed for bankruptcy relief, it has had no operating income whatsoever, and its only source of

7

income is from Mr. Potter (who has regularly loaned money to it) (docs. ## 11, 12, 30).[7] Additionally, as Aleutian accurately points out, the Debtor's schedules and statement of financial affairs indicate no annual income for 2015 or for the prior two years.

Further supporting the lack of income, the Debtor has not provided a single tax return showing annual income. The Debtor states it does not file tax returns, and is not required to file tax returns, because it is a disregarded entity for tax purposes (doc. # 33, p. 3). It explains that the Debtor's income and expenses are included with the income and expenses of its member, Alaska Tendering, and no further reporting is required (doc. # 33, p. 3). The Debtor is careful to immediately point out that for eligibility purposes this distinction in tax reporting responsibilities "does not mean that [the Debtor and Alaska Tendering] are, in fact, separate entities" (doc. # 33, p. 3). It appears the Debtor is urging the Court to make its determination of whether the Debtor has regular annual income based upon Alaska Tendering's financial statements and tax returns. This is a creative – but fatally flawed – theory. The Debtor seeking relief in this case is Victorious, LLC, not Alaska Tendering. Moreover, if the Court were inclined to consider the Debtor and Alaska Tendering as the same entity for eligibility purposes based upon the tax treatment of the two entities, it would work to the detriment of the Debtor. Adoption of that theory would result in the Court's dismissing this case based upon Alaska Tendering's failure to comply with this Court's order. More importantly, the Court will not give a second chance to the other of Mr. Potter's limited liability companies because it is now choosing to provide the information he refused to provide in the prior case.

The Debtor's schedules, statements, and operating reports manifestly refute any assertion that the Debtor has sufficiently stable and regular income to make plan payments. Based upon this record, the Court finds the Debtor does not have the required regular annual income to meet either the definitional requirement of either § 101(19B) or § 109(f) for relief as a family fisherman under Chapter 12.

**2. Is there cause for dismissal of the Debtor's Chapter 12 case?**

Aleutian's second basis for dismissal is that the Debtor has failed to conduct this case in compliance with the Bankruptcy Code or, put another way, that there is "cause" for dismissal of this case under the governing provisions of the Bankruptcy Code. The controlling statute provides in relevant part:

> On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including –
> (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;

---

[7] The Debtor's first operating report (doc. # 11) covering the period from August 7, 2015 to September 30, 2015 lists "$0" on every line. The Debtor's second operating report (doc. # 12) covering the month of October 2015 similarly shows no income, with the exception of a $1,300 loan made by Mr. Potter. (The Debtor then subtracted an expense of $1,000 and a bank fee of $34, reporting a net balance of $266 for October 2015.) The operating report for November 2015 (doc. # 30) once again lists no income, other than a $2,250 loan from Mr. Potter, which after expenses, leaves a total balance of $1,306.

>   …
>   (9)    continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation...

11 U.S.C. § 1208(c)(1) & (9).

The decision of whether to dismiss a Chapter 12 case is squarely within the discretion of the Bankruptcy Court. <u>In re Suthers</u>, 173 B.R. 570, 572 (Bankr. W.D.Va. 1994). A debtor's re-filing of a case may be grounds for dismissal in instances where the debtor has substantially the same assets and creditors as in the predecessor case, the debtor files in response to a foreclosure suit, or no change has occurred in the debtor's circumstances. <u>Matter of Kennedy</u>, 181 B.R. 418 (Bankr. D. Neb. 1995) (debtor's re-filing of case within four days of predecessor case was cause for dismissal under § 1208 where debtor had substantially the same assets and creditors as in the predecessor case); <u>In re Walton</u>, 116 B.R. 536 (Bankr. N.D. Ohio 1990) (debtor's third re-filing in two different courts within three years in response to foreclosure suit where there was no change in debtor's circumstances or increase in income was cause for dismissal). Courts have also dismissed Chapter 12 cases where the court found an unjustifiable delay in producing a feasible plan is prejudicial to the creditors and where the court found the record established it was unrealistic to expect the debtor to effectuate a viable reorganization plan based on income and expense projections. <u>See</u> <u>Novack v. DeRosa</u>, 934 F.2d 401, 404 (2d Cir. 1991); <u>In re Euerle Farms, Inc.</u>, 861 F.2d 1089, 1091 (Minn. 1988).

In considering whether the facts of this case demonstrate cause for dismissal under § 1208(c)(1), the Court begins its analysis by looking at whether the Debtor has acted in good faith. The coincidence of parties, interests, and claims in the Alaska Tendering case and the instant case, as well as the timing of this filing vis-à-vis the entry of the Adequate Protection Order in the Alaska Tendering case, raises a specter of bad faith and calls into question whether Mr. Potter and his limited liability companies are abusing the bankruptcy process. To scrutinize the question, the Court looks at the following factors. First, the Debtor's member, Alaska Tendering, and its manager, Mr. Potter, have both previously filed for bankruptcy relief in this Court, and after just three days, they filed a motion for joint administration on the basis that they shared substantially the same debt. Then, for more than three months, those debtors failed to amend their schedules and statements of financial affairs to provide complete and accurate information, failed to disclose bank accounts which had substantial activity, and failed to disclose their operating expenditures to the trustee, Court or creditors. Because such conduct demonstrated at least a reckless indifference to the truth, see <u>In re Kloubec</u>, 247 B.R. 246, 256 (Bankr. N.D. Iowa 2002), the Court found both debtors had willfully failed to comply with the Adequate Protection Order.  Therefore, the Court dismissed the jointly administered cases with prejudice. Second, the Debtor filed its case just one hour after the Adequate Protection Order was entered. Third, notwithstanding the more than coincidental timing of its case filing, the Debtor now argues it should be treated as if the income of Alaska Tendering is its own income, though the income information in question is

9

precisely the information that was intentionally concealed from the Court in the predecessor case. Fourth, the Debtor's only creditor in this case was also a creditor in the predecessor case. Fifth, the plan the Debtor proposes in this case is substantially identical to the plan filed in the Alaska Tendering case: it offers the same biannual payment schedule funded from the projected profits from the fishing operations of the Judi B. Sixth, even with the prior related cases being dismissed, by filing the instant case, the Debtor has stayed Aleutian from enforcing its rights against the Vessel which, arguably, is the primary source of funds for all three of the related parties. Taken together, these factors demonstrate that the conduct to date in these serial, related filings has both delayed Aleutian's foreclosure for an unreasonable period of time and been prejudicial to Aleutian's rights. This constitutes cause for dismissal under § 1208(c)(1).

Turning to whether there is cause to dismiss the case under § 1208(c)(9), the Court examines whether there is a continuing loss to or diminution of the estate and a lack of reasonable likelihood of rehabilitation, based on the apparent lack of feasibility of the Debtor's plan. Under § 1225(a)(6), the Court must find that "the debtor will be able to make all payments under the plan and to comply with the plan" as a prerequisite to confirming the plan. The debtor has the burden of establishing all the elements of feasibility. In re Ellis, 478 B.R. 132, 139 (Bankr. N.D.N.Y. 2012). The debtor cannot propose a plan that is entirely speculative, and the Court must consider the probability of payment based upon a determination of reasonableness. Id.

The Debtor's plan is entirely contingent on a projected sale of the Vessel for $1.2 million. The plan states that in the event the Vessel is not sold by June 2016, the Debtor will make biannual payments starting September 2016, ranging from $60,000 to $140,000, based on projected profits from summer and winter fishing seasons (doc. # 14). The plan does not require the Debtor to make any other payments. Thus, the only guaranteed payment for Aleutian would not be made until September 2016, and whether the Debtor will be able to make the biannual payments due to start at that time is highly speculative. In the meantime, the Vessel is not operating and is in storage in Seattle, Washington (doc. #10). Storage fees continue to accrue, and due to the automatic stay, Aleutian has been unable to move forward with the state court maritime lien foreclosure action it commenced pre-petition (doc. # 8, Ex. A).

The sale of the Vessel itself is a very speculative event. On October 27, 2015, the Debtor entered into an exclusive listing agreement with GSI Boat, a vessel broker, to sell the Vessel (doc. # 18, Ex. C) for $1.2 million. On November 20, 2015, the Debtor filed an application to approve the appointment of personal property broker (doc. # 19, the "Broker Application"). The Court entered an order approving the Broker Application on December 11, 2015. However, since that time, the Debtor has presented no proof of any progress in finding a buyer for the Vessel. It has not filed any documents citing to purchase offers on the Vessel, and it has not shown any developments suggesting that a sale is likely before the summer of 2016 or that it will succeed in finding a willing and able purchaser for the $1.2 million price. The only other mention

regarding the viability of the proposed sale is a general indication that Mr. Potter is having discussions with potential purchasers, an indication that was last made in the Alaska Tendering case at the August 28, 2015 hearing.

The record reflects: (1) the Debtor has no actual income; (2) no information as to whether the Vessel is likely to sell by May or June of 2016; (3) no admissible proof that the Vessel, if or when it sells, would sell for enough money to satisfy the debts in this case; and (4) Aleutian's collateral is diminishing in value with the passage of time. Based upon this record, the Court finds there has been a continuing loss or diminution of the estate and there is no a reasonable likelihood of rehabilitation in this case.

## CONCLUSION

Based upon the foregoing findings of fact, analysis of pertinent jurisprudence, and conclusions of law, the Court determines the Debtor is ineligible for Chapter 12 relief under § 109(f), because it is not a family fisherman with regular annual income as defined under § 101(19A) and (19B) of the Bankruptcy Code. The Court also determines cause exists for dismissal of the Debtor's case under § 1208(c)(1) and (9), due to the Debtor's continuing and unreasonable delay which is prejudicial to creditors, and the continuing diminution of the value of the Debtor's estate and its inability to show a reasonable likelihood of rehabilitation. The Court also finds this Debtor has not proceeded in good faith, which is a fundamental requirement for the right to relief under the Bankruptcy Code. Accordingly, the Court grants Aleutian's motion to dismiss, on both eligibility and substantive grounds.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

Burlington, Vermont  
February 17, 2016

Colleen A. Brown  
United States Bankruptcy Judge